UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BODNAR,<br><br>        Plaintiff,<br><br>    v.<br><br>MADDAX, et al.,<br><br>        Defendants. | Case No. 1:17-cv-00845-AWI-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS FEDERAL CLAIMS WITH PREJUDICE FOR FAILURE TO STATE A CLAIM AND DISMISS STATE CLAIMS WITHOUT PREJUDICE FOR LACK OF JURISDICTION<br><br>(ECF NO. 1)<br><br>OBJECTIONS DUE WITHIN TWENTY-ONE (21) DAYS |

Thomas Bodnar ("Plaintiff") is a prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant filed to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on June 20, 2017, in the Central District of California. (ECF No. 1). It was transferred to this District on June 22, 2017. (ECF No. 4).

Plaintiff alleges that multiple prison primary care physicians and medical professionals failed to treat his pain and worsening symptoms related to a surgery in 2006. Although they committed to refer him to an orthopedic surgeon, they repeatedly failed to do so. When Plaintiff finally saw the orthopedic surgeon, they failed to allow him to see the orthopedic surgeon again after various tests were taken.

The Court has reviewed the complaint and recommends that it be dismissed because it fails to state a violation of the constitution because what Plaintiff describes amounts to negligence, and not deliberate indifference as that term is used in the relevant case law.

Plaintiff has also asserted state law claims for professional negligence and medical malpractice. The Court recommends declining to exercise jurisdiction over these claims in light of the dismissal of Plaintiff's federal claims (Plaintiff may file a lawsuit in state court regarding these state law claims if he so chooses).

## I.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that

*pro se* complaints should continue to be liberally construed after <u>Iqbal</u>).

## II.    SUMMARY OF COMPLAINT

Plaintiff alleges that, in 2006, he had surgery placing metal plates and screws in his left shoulder.   In 2009, Plaintiff was incarcerated at Ironwood State Prison ("ISP").   In 2012, Plaintiff began to experience sharp pain inside his left shoulder and numbness in digits 4 and 5 of his left hand.  Plaintiff's Primary Care Physician ("PCP") ordered x-rays.  After seeing them, the PCP put in a Request for Services ("RFS") for Plaintiff to see an orthopedic surgeon. Plaintiff went to Riverside Regional Medical Center, and the orthopedic surgeon ordered tests to be done and then asked for Plaintiff to return.

However, Plaintiff was then transferred to Valley State Prison ("VSP").  Defendant Dr. Maddax was Plaintiff's first PCP upon arrival at VSP.  Plaintiff told Maddax about his shoulder injury.  Dr. Maddaz stated she would put in an RFS for Plaintiff to see an orthopedic surgeon close to VSP.

Plaintiff waited 90 days and then asked about the referral.  It took another 3 weeks for Plaintiff to see Dr. Maddax.  When he did, Dr. Maddax said she had not done the RFS, but now would do so.   Dr. Maddax did not perform any tests herself or try any treatment, despite Plaintiff explaining that the pain inside his left shoulder was getting more frequent, as well as the numbness and tingling in digits 4 and 5 of his left hand.

Again, Plaintiff waited and then put in a medical request.  After several weeks, Plaintiff saw Dr. Maddax.  Again, she had not issued the RFS.  This scenario happened several times. Dr. Maddax would say that she would issue an RFS for an orthopedic surgeon and then failed to do it.  Dr. Maddax never provided any care (although she kept Plaintiff's pain medication where it was before 2012).

After approximately a year, Defendant Dr. Johnson became Plaintiff's PCP.  Plaintiff explained the medical complaints, the recommendation to see the orthopedic surgeon in order to determine the cause, and how Dr. Maddax kept saying she would do an RFS.  Dr. Johnson ordered x-rays.   Once they came back, Dr. Johnson stated she would do an RFS to an orthopedic surgeon.

Plaintiff again waited over 90 days, then put in a medical request. Weeks later Plaintiff saw Dr. Johnson, who said that she had not done the RFS but would put it in. However, she again failed to do an RFS. This was a repeated scenario, and lasted through 2014. Dr. Johnson only did x-rays. Dr. Johnson kept the medication at the same levels, despite increasing pain.

At some point, Plaintiff was able to see an orthopedist, after getting a referral from another PCP who is not named as a defendant. The orthopedist said he would order a diabetes test and neurology tests of Plaintiff's left shoulder and hand. If the tests come back negative, then the doctor would proceed with other tests or possible exploratory surgery. The neurological and diabetes tests were done and both came back negative.

Plaintiff was then assigned to PCP C. Sisodia. Defendant Physician Assistant C. Sisodia went over the x-rays and the test results. Plaintiff told PA Sisodia that the orthopedic surgeon wanted to see Plaintiff after the tests were done. PA Sisodia said she would put in an RFS to see the orthopedic surgeon. Plaintiff waited over 90 days, put in a medical request, and went back to see PA Sisodia. PA Sisodia said she had never put in the RFS, but would do so. This happened several times. PA Sisodia never did anything about Plaintiff's complaints. PA Sisodia only kept the pain medication at the same level as it was before Plaintiff's complaints of increasing left shoulder pain and numbness in digits 4 and 5 of his left hand.

When an inmate puts in a medical request form, he first sees the registered nurse ("RN"), who reviews the medical issues and makes a decision whether to refer the inmate to a PCP. Plaintiff put in several medical requests related to his shoulder pain and the numbness in his hand, but both Wall and Sanchez failed to refer Plaintiff to his PCP. This resulted in even further delays.

## III.    ANALYSIS OF PLAINTIFF'S CLAIMS

### A.    Legal Standards

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires a plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton

infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

### B. Application to Plaintiff's Complaint

Plaintiff's allegations do not state a claim for violation of the Eighth Amendment's cruel and unusual punishment clause based on deliberate indifference to serious medical needs under these legal standards.

The Court is sympathetic to Plaintiff's medical situation. Plaintiff has described a pattern of incompetence from the medical professionals at his prison. He describes how they repeatedly failed to follow up on referrals that they promised to provide. Moreover, they did not undertake to solve his medical issues in any way, short of ordering x-rays and keeping

Plaintiff on pain medication. Plaintiff has alleged that he experiences pain and worsening symptoms from his surgery many years ago.

However, these allegations do not state a claim for violation of the Constitution for two reasons. First, Plaintiff's facts set forth medical negligence or malpractice, but not deliberate indifference to serious medical needs. There are no allegations that a medical professional was aware of a treatment that would help his needs and yet purposefully failed to provide it. Instead, Defendants Maddox, Johnson, and Sisodia apparently negligently failed to follow through with the referrals they committed to do. While Plaintiff did not get referrals these defendants, Plaintiff was still receiving treatment in the form of pain medication.

As to Defendants Wall and Sanchez, Plaintiff has not alleged any denial of care that occurred because they did not allow Plaintiff to see his PCP. While Plaintiff alleges that the actions of Defendants Wall and Sanchez led to further delays, it does not appear that these delays had any impact on Plaintiff's treatment. After seeing his PCPs, it does not appear that Plaintiff's treatment changed at all. Accordingly, it does not appear that Defendants Wall and Sanchez were deliberately indifferent to Plaintiff's serious medical needs by not referring Plaintiff to a PCP when he asked to see one.

Second, Plaintiff has not alleged a treatment that the defendants have failed to provide. Even the orthopedic surgeon does not yet have a diagnosis or proposed treatment. After several years of waiting, when Plaintiff saw the orthopedic surgeon, the surgeon suggested tests to attempt to learn what was wrong. Those tests were negative, i.e., did not indicate the source of the problem. The orthopedic surgeon said that if those tests were negative, the surgeon may try other tests or exploratory surgery. These are attempts to diagnose the issue. They are not treatments. It is not known yet what is wrong with Plaintiff's hand or what could solve the problem, if anything. While the Court understands Plaintiff's legitimate desire to keep getting tests and diagnostics to find a solution to his painful symptoms, his allegations do not show that medical professionals are withholding a treatment that might help Plaintiff. Instead, it seems that the medical professionals do not know how to treat Plaintiff and are at most being negligent in not exploring tests that *might* reveal a solution. Again, while such actions might

constitute medical malpractice, they fall short of the requirement for a constitutional claim for cruel and unusual punishment under the Eighth Amendment under the legal standards described above.

### C.     State Law Claims

Plaintiff has also asserted state law claims for professional negligence and medical malpractice.  Because Plaintiff has not asserted any proper federal claims, the Court should decline to adjudicate the state law claims.  28 U.S.C. § 1367(a); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001); see also Gini v. Las Vegas Metro. Police Dep't, 40 F.3d 1041, 1046 (9th Cir. 1994). "When...the court dismisses the federal claim leaving only state claims for resolution, the court should decline jurisdiction over the state claims and dismiss them without prejudice." Les Shockley Racing v. National Hot Rod Ass'n, 884 F.2d 504, 509 (9th Cir. 1989).  Plaintiff may choose to file a state lawsuit asserting these claims in state court.

## IV.     CONCLUSION

The Court finds that Plaintiff's Complaint (ECF No. 1) fails to state any cognizable federal claims upon which relief may be granted under § 1983.  The remaining claims are state law claims, which should be raised in a state lawsuit.

The Court does not recommend providing leave to amend.  This is not a situation where more facts could state further claims.  Plaintiff's complaint is very detailed and explains what happened very clearly.  Based on the facts alleged, the Court finds that Plaintiff cannot establish a violation of the Constitution for the reasons described above.  Further amendment would be futile.

Accordingly, this Court recommends that the assigned district judge dismiss all federal claims with prejudice and dismiss the state law claims without prejudice.[1]

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within

---

[1] Under applicable law, the Court would construe a dismissal for the above described reasons as constituting a "strike" under 28 U.S.C. § 1915.

twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**March 28, 2018**__  /s/ _Erica P. Grosjean_
UNITED STATES MAGISTRATE JUDGE